## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ISABELLE FECCIA,

               Plaintiff,                             CASE NO.:

          v.                                 JURY TRIAL DEMANDED

BAKER BARRIOS ARCHITECTS, INC.,

               Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ISABELLE FECCIA ("Plaintiff" and/or "Ms. Feccia"), by and through her undersigned counsel, hereby complains of Defendant, BAKER BARRIOS ARCHITECTS, INC. ("Defendant" and/or "BBA"), and alleges as follows:

## **INTRODUCTION**

1.    This case involves a female employee who was unlawfully discriminated against and retaliated against by her employer on the basis of her pregnancy and sex.

2.    Ms. Feccia brings this action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA"), and the Family and Medical Leave Act, 29 U.S.C. § 2612 ("FMLA").

## PARTIES

3.      Ms. Feccia is an individual female residing in Orange County, Florida.

4.      Defendant is a Florida Corporation with its principal place of business located at 189 S. Orange Ave Suite 1700, Orlando, Florida 32801.

5.      At all times material, Ms. Feccia was employed by Defendant.

6.      The exact number of Defendant's employees is unknown, but upon information and belief, there are well more than the statutory minimum under Title VII, the FCRA, and the FMLA.

7.      At all times material, Defendant was an "employer" within the meaning of 29 U.S.C. § 2611(4)(a) and within the meaning of 42 U.S.C. § 2000e(b).

8.      At all times material, Ms. Feccia was an "eligible employee" of Defendant within the meaning of 29 U.S.C. § 2611(2).

9.      At all times material, Defendant was a "person" within the meaning of § 760.02(6), Florida Statutes, and an "employer" within the meaning of § 760.02(7), Florida Statutes.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 2617(a).

2

11.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Florida. The Defendant was and is still located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

12.    Ms. Feccia has complied with all administrative requirements to file this action.

13.    On or around June 9, 2023, Ms. Feccia timely dual-filed a charge of discrimination (Charge No. 510-2023-07642) against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

14.    On or around February 16, 2024, the EEOC issued Ms. Feccia's Notice of Right to Sue against Defendant.

15.    Ms. Feccia is timely commencing this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

16.    In or around January 2020, Defendant hired Ms. Feccia as a Senior Interior Designer.

17.     At all times material, Ms. Feccia was employed at Defendant's Orlando office, located at 189 S. Orange Avenue, Suite 1700, Orlando, Florida 32801.

18.     At all times material, Ms. Feccia was an individual female and had recently given birth, and was therefore a protected class member.

19.     At all times material, Ms. Feccia was considered an exceptional employee and had a record of positive performance.

20.     In or around 2022, Ms. Feccia learned she was pregnant and informed Defendant of her intent to take maternity leave.

21.     Ms. Feccia discussed her maternity leave with Lisa Couch ("Couch"), an individual female employed by Defendant as a Human Resources representative.

22.     Ms. Feccia made arrangements with Couch to begin her leave in December 2022, and to return to work in April 2023.

23.     On or around December 12, 2022, Ms. Feccia began her pregnancy leave.

24.     Ms. Feccia was initially on paid leave, using both her PTO benefits and short-term disability benefits.

25.     On or around January 4, 2023, Ms. Feccia gave birth to her child.

26.     In or around February 2023, Ms. Feccia had exhausted all of her paid leave benefits and was transitioned to FMLA leave by Defendant.

27.    In or around March 2023, Ms. Feccia emailed Dietz asking if she could return to work full time, working partially from home and partially from the office.

28.    Ms. Feccia was eager to return to work and believed it may help ease the transition of her return. Dietz failed to respond to Ms. Feccia's request.

29.    Ms. Feccia ultimately returned to work on or around April 3, 2023.

30.    Upon her return, Ms. Feccia discovered that her work area was in complete disarray, with construction materials on top of her desk and her entire work area covered in dust from the nearby construction work.

31.    Ms. Feccia was taken aback, as many of her coworkers would receive warm welcomes when they returned from leave, often receiving flowers on their desks.

32.    It was clear to Ms. Feccia that Defendant was not expecting Ms. Feccia to be returning to work.

33.    Ms. Feccia complained about the condition of her desk to Jed Prest ("Prest"), an individual male employed by Defendant as Managing Partner, and Meghan Dietz ("Dietz"), an individual female employed by Respondent as Design Operations Practice Leader.

34.    Prest and Dietz held supervisory authority over Ms. Feccia, including the power to hire, fire, demote, and promote Ms. Feccia.

35.     Prest and Dietz largely ignored Ms. Feccia's complaint, forcing her to work from a temporary desk upon her return.

36.     When Ms. Feccia returned to work, she asked Dietz if there were any tasks she could assist with, as she was eager to begin working again.

37.     Over the course of the next two weeks, Ms. Feccia was given just two tasks to complete. Ms. Feccia felt uncomfortable and was unsure why she was being assigned such little work.

38.     On or around April 7, 2023, Ms. Feccia's child became ill.

39.     Ms. Feccia contacted Dietz and requested to work from home to take care of him. Dietz granted Ms. Feccia's request.

40.     Ms. Feccia also reiterated to Dietz that she was willing to assist with any work tasks that were available. Dietz said that she would get back to Ms. Feccia.

41.     That same day, Ms. Feccia also participated in a Design Operations weekly meeting, where she also informed the group that she was happy to help with any projects. Ultimately, no one from the group contacted Ms. Feccia.

42.     On or around April 10, 2023, Ms. Feccia messaged Dietz informing her that Ms. Feccia's son was still sick, and that the illness had spread to Ms. Feccia, causing her to become sick too.

43.     In response Dietz, wished Ms. Feccia well but failed to provide Ms. Feccia with any work assignments.

44.     On or around April 12, 2023, Ms. Feccia and her child's condition worsened, making her feel extremely unwell.

45.     Defendant employed a generous unlimited sick leave policy, leading Ms. Feccia to believe that she could take the remainder of the week to recover without issue.

46.     Ms. Feccia used her sick leave benefits from April 12, 2023, to April 14, 2023, without any protest from her supervisors.

47.     On or around Monday, April 17, 2023, Ms. Feccia received a Microsoft Teams call from Prest.

48.     On the call, Prest informed Ms. Feccia that she was being terminated due to a "restructuring" of Ms. Feccia's department.

49.     When Ms. Feccia inquired as to why she was being terminated, Prest stated that she was being terminated for "an alignment of profitability."

50.     Ms. Feccia was shocked and extremely upset. Ms. Feccia had just returned to work from her maternity leave and felt that she had not been given any meaningful opportunity to resume her work and contribute to the organization.

51.     During the call, Ms. Feccia even asked if she could work in another role for Defendant. Prest flatly responded "no", despite the fact that

Defendant's interior design team had plenty of work available and had plans to promote two interior designers later in the month.

52.     Ms. Feccia was devastated at the news of her termination but tried her best to keep her composure.

53.     On or around April 17, 2023, Defendant unlawfully terminated Ms. Feccia on the basis of her sex and pregnancy.

54.     Defendant unlawfully discriminated against Ms. Feccia because of her sex and pregnancy, and retaliated against Ms. Feccia for taking pregnancy leave.

55.     Defendant interfered with Ms. Feccia's protected rights under the FMLA and retaliated against Ms. Feccia for exercising her FMLA leave benefits.

56.     The events described above are just some of the examples of unlawful discrimination, retaliation, and interference to which Defendant subjected Ms. Feccia throughout her employment.

57.     Ms. Feccia claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

58.     At all times material, Defendant's employees were acting as agents of Defendant in their unlawful treatment of Ms. Feccia.

59.     At all times material, Defendant acted with deliberate indifference to the unlawful treatment complained of herein.

60.     As a result of Defendant's actions, Ms. Feccia felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

61.     As a result of the acts and conduct complained herein, Ms. Feccia has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Feccia has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Ms. Feccia has further experienced severe emotional and physical distress.

62.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendant.

63.     Defendant is either directly or vicariously liable for the unlawful conduct complained of herein.

## CAUSES OF ACTION
### COUNT I
### 42 U.S.C. § 2000e-2
### *Sex Discrimination*

64.     Ms. Feccia reincorporates the factual allegations in Paragraphs 16 through 63.

65.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

66.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

67.     Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

68.     Ms. Feccia was an individual female and was therefore a protected class member.

69.     The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

10

70.     Defendant subjected Ms. Feccia to discriminatory treatment on the basis of her sex, including but not limited to, unlawfully terminating Ms. Feccia's employment.

71.     Defendant targeted Ms. Feccia because she had recently given birth and because she exercised her maternity leave benefits. No similarly situated male employees endured the discriminatory conduct that Ms. Feccia was forced to endure.

72.     The discriminatory actions of the Defendant against Ms. Feccia, as described and set forth above, constitute an adverse employment action for the purposes of Title VII.  In subjecting Ms. Feccia to adverse employment actions, the Defendant intentionally discriminated against Ms. Feccia with respect to the compensation, terms, conditions, or privileges of her employment.

73.     As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of Title VII, Ms. Feccia has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Feccia has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Feccia accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

74.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Feccia's rights under Title VII, warranting the imposition of punitive damages, in addition to compensatory damages.

75.    The conduct of the Defendant deprived Ms. Feccia of her statutory rights guaranteed under Title VII.

76.    Ms. Feccia further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT II**
**42 U.S.C. § 2000e-3**
*Retaliation*

77.    Ms. Feccia reincorporates the factual allegations in Paragraphs 16 through 63.

78.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

79.    Ms. Feccia was an individual female and was therefore a protected class member.

80.    Ms. Feccia engaged in a protected activity when she informed Defendant of her pregnancy and exercised her maternity leave benefits.

81.     In response to Ms. Feccia asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Feccia.

82.     Defendant retaliated against Ms. Feccia by engaging in conduct, including but not limited to, unlawfully terminating Ms. Feccia's employment.

83.     Defendant took the above-mentioned materially adverse actions, among others, against Ms. Feccia because of her protected activities.

84.     Any reasonable employee in Ms. Feccia's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Feccia was forced to endure.

85.     Defendant's alleged bases for its adverse employment actions against Ms. Feccia are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

86.     As a direct and proximate result of the Defendant's retaliatory conduct in violation of the Title VII, Ms. Feccia has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Feccia has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Feccia accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

87.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Feccia's rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

88.    The conduct of the Defendant deprived Ms. Feccia of her statutory rights guaranteed under Title VII.

89.    Ms. Feccia further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT III
### § 760.10(1), Fla. Stat.
### *Sex Discrimination*

90.    Ms. Feccia reincorporates the factual allegations in Paragraphs 16 through 63.

91.    The FCRA prohibits employment discrimination in an individual's terms, conditions, and privileges of employment because of the individual's sex or pregnancy. § 760.10(1)(a), Fla. Stat.

92.    Ms. Feccia was an individual female and was therefore a protected class member.

93.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

94.     Defendant subjected Ms. Feccia to discriminatory treatment on the basis of her sex, including but not limited to, unlawfully terminating Ms. Feccia's employment.

95.     Defendant targeted Ms. Feccia because she had recently given birth and because she exercised her maternity leave benefits. No similarly situated male employees endured the discriminatory conduct that Ms. Feccia was forced to endure.

96.     The discriminatory actions of the Defendant against Ms. Feccia, as described and set forth above, constitute an adverse employment action for purposes of the FCRA.   In subjecting Ms. Feccia to adverse employment actions, the Defendant intentionally discriminated against Ms. Feccia with respect to the compensation, terms, conditions, or privileges of her employment.

97.     As a direct and proximate result of the Defendant's intentional discriminatory conduct in violation of the FCRA, Ms. Feccia has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.   Ms. Feccia has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Feccia accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

98.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Feccia's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

99.     The conduct of the Defendant deprived Ms. Feccia of her statutory rights guaranteed under the FCRA.

100.    Ms. Feccia further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT IV**
**§ 760.10(7), Fla. Stat.**
*Retaliation*

101.    Ms. Feccia reincorporates the factual allegations in Paragraphs 16 through 63.

102.    The FCRA prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. § 760.10(7), Fla. Stat.

103.    Ms. Feccia was an individual female and was therefore a protected class member.

104.    Ms. Feccia engaged in a protected activity when she informed Defendant of her pregnancy and exercised her maternity leave benefits.

105.   In response to Ms. Feccia asserting her right to enjoy the same employment benefits as every other employee, the Defendant retaliated against Ms. Feccia.

106.   Defendant retaliated against Ms. Feccia by engaging in conduct, including but not limited to, unlawfully terminating Ms. Feccia's employment.

107.   Defendant took the above-mentioned materially adverse actions, among others, against Ms. Feccia because of her protected activities.

108.   Any reasonable employee in Ms. Feccia's position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Feccia was forced to endure.

109.   Defendant's alleged bases for its adverse employment actions against Ms. Feccia are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

110.   As a direct and proximate result of the Defendant's retaliatory conduct in violation of the FCRA, Ms. Feccia has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Feccia has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Feccia accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

111.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Feccia's rights under the FCRA, warranting the imposition of punitive damages in addition to compensatory damages.

112.   The conduct of the Defendant deprived Ms. Feccia of her statutory rights guaranteed under the FCRA.

113.   Ms. Feccia further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT V**
**29 U.S.C. § 2615**
***FMLA Retaliation***

114.   Ms. Feccia reincorporates the factual allegations in Paragraphs 16 through 63.

115.   The FMLA prohibits employers from retaliating against an employee in any manner for having exercised or attempted to exercise protected rights under the FMLA or using the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).

116.   The FMLA prohibits employers from retaliating against an employee in any manner for opposing or complaining about any unlawful practice under the FMLA. 29 C.F.R. § 825.220(a)(2).

117.   By nature of Ms. Feccia's employment with Defendant, Ms. Feccia was an eligible employee and was entitled to leave benefits under the FMLA.

118.   Ms. Feccia was entitled to FMLA leave for her pregnancy and for the 12-month period following the birth of her child. 29 C.F.R. § 825.120.

119.   Defendant was on notice of Ms. Feccia's entitlement to FMLA leave.

120.   Ms. Feccia engaged in a protected activity when she exercised and/or attempted to exercise her right to leave benefits under the FMLA in or around February of 2023.

121.   Ms. Feccia acted in good faith and with the objective and subjective belief that she was entitled to leave benefits under the FMLA.

122.   Defendant retaliated against Ms. Feccia by engaging in conduct, including but not limited to, unlawfully terminating Ms. Feccia's employment.

123.   Defendant took the above-mentioned materially adverse actions, among others, against Ms. Feccia because of her protected activities.

124.   Any reasonable employee in Ms. Feccia's position would be dissuaded from opposing unlawful conduct if they knew they would be subjected to the same kind of treatment that Ms. Feccia was subjected to.

125.   Defendant's alleged bases for its adverse employment actions against Ms. Feccia are pretextual and have been asserted only to cover up the retaliatory nature of the Defendant's conduct.

126.   As a result of Defendant's unlawful conduct, Ms. Feccia has suffered and will continue to suffer financial and economic damages in the form

of lost wages (front and back pay) and lost benefits. Ms. Feccia has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Feccia accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

127.   The conduct of the Defendant deprived Ms. Facia of her statutory rights guaranteed under the FMLA.

128.   Ms. Feccia further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT VI
### 29 U.S.C. § 2615
### *FMLA Interference*

129.   Ms. Feccia reincorporates the factual allegations in Paragraphs 16 through 63.

130.   The FMLA prohibits employers from interfering with, restraining, or denying the exercise or attempted exercise of any right protected by the FMLA. 29 U.S.C. § 2615(a).

131.   By nature of Ms. Feccia's employment with Defendant, Ms. Feccia was an eligible employee and was entitled to leave benefits under the FMLA.

132.   Ms. Feccia was entitled to FMLA leave for her pregnancy and for the 12-month period following the birth of her child. 29 C.F.R. § 825.120.

133.    Defendant was on notice of Ms. Feccia's entitlement to FMLA leave.

134.    In or around February of 2023, Ms. Feccia exercised and/or attempted to exercise her right to leave benefits under the FMLA.

135.    As an eligible employee under the FMLA, Ms. Feccia was entitled to be restored to her position of employment held when her leave commenced, or be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a).

136.    Defendant unlawfully terminated Ms. Feccia upon her return from FMLA leave.

137.    Defendant violated the FMLA by unlawfully interfering, restraining, and denying Ms. Feccia's rights under the FMLA, including but not limited to, interfering with and denying Ms. Feccia's right to be restored to her former employment position or an equivalent position with equivalent terms and conditions of employment.

138.    As a result of Defendant's unlawful conduct, Ms. Feccia has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Ms. Feccia has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Ms. Feccia accordingly demands lost economic

damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

139.   The conduct of the Defendant deprived Ms. Feccia of her statutory rights guaranteed under the FMLA.

140.   Ms. Feccia further requests that her attorney's fees and costs be awarded as permitted by law.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation of Title VII, the FCRA, and the FMLA.

Dated:  Miami, Florida **DEREK SMITH LAW GROUP, PLLC**
       February 29, 2024, *Counsel for Plaintiff*

/s/ Kyle T. MacDonald
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Kyle@dereksmithlaw.com