**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

> **EXHIBIT**
> **B**

|  |  |  |
|---|---|---|
| **ISABELLE FECCIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 6:24-cv-00434-JSS-DCI** |
| | ) | |
| **BAKER BARRIOS ARCHITECTS,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S AMENDED ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, BAKER BARRIOS ARCHITECTS, INC. ("Defendant") by

and through its undersigned counsel, hereby responds to the consecutively

numbered paragraphs of Plaintiff's, ISABELLE FECCIA (hereinafter "Plaintiff"),

First Set of Interrogatories to Defendant as follows:

1.      Identify all persons whom you contend have knowledge of the facts and
circumstances, including but not limited to any claims and/or defenses,
alleged in the Pleadings, including the facts which you contend are known to
each person, and for each person so identified, specify the subject matter
about which each such person has knowledge, the employer and job title of
such person, and the last known address and telephone number of that
person.

**ANSWER:**

1. **Isabelle Feccia**
   **Plaintiff**
   **Interior Designer, Bermello Ajamil & Partners, Inc.**
   **c/o Derek Smith Law Group, PLLC**
   **520 Brickell Key Drive, Suite O-301**
   **Miami, FL 33131**

   *Plaintiff has knowledge of the allegations contained in Plaintiff's Amended Complaint.*

2. **Wayne Dunkelberger**
   **Chief Design Officer, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Mr. Dunkelberger may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

3. **Rob Ledford**
   **Chief Operations Officer, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Mr. Ledford may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

4. **Meghan Dietz**
   **Design Operations Director, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Ms. Dietz may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

5. **Johnny Dagher**
   **Director Senior Living, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Mr. Dagher may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

6. **Grayson Silver**
   **Director Vertical Mixed-Use + Director Student Housing, Tampa Managing Partner, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Mr. Silver may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

7. **Cory Heck**
   **Design Director, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Mr. Heck may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

8. **Michael Lynch**
   **Project Manager, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Mr. Lynch may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

9. **Jed Prest**
   **Director Commercial Mixed-Use + Director K-12 Education, Orlando Managing Partner, Baker Barrios Architects, Inc.**
   **c/o Jackson Lewis P.C.**
   **390 North Orange Avenue, Suite 1285**
   **Orlando, Florida 32801**
   **(407) 246-8440**

   *Mr. Prest may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

10. **Chad Byerly**
    **Retired**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Mr. Byerly may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

11. **Brad Lutz**
    **Practice Leader Multifamily, Managing Principal Chicago, Baker Barrios Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Mr. Lutz may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

12. **David Del Tosto**
    **Principal + Architect, Alfonso Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Mr. Del Tosto may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

13. **Peter Vidal**
    **Project Manager, Baker Barrios Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Mr. Vidal may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

14. **Annette Rivera**
    **Director Senior Living, Baker Barrios Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Ms. Rivera may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

15. **Marilyn Russell**
    **Director Corporate and Landlord Services, Baker Barrios Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Ms. Russell may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

16. **Sydney Moeller**
    **Director Workplace Strategies, Baker Barrios Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Ms. Moeller may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

17. **Angela Reed**
    **Senior Interior Designer, Baker Barrios Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Ms. Reed may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, and Defendant's relevant employment practices.*

18. **Lisa Couch**
    **Human Resources, Baker Barrios Architects, Inc.**
    **c/o Jackson Lewis P.C.**
    **390 North Orange Avenue, Suite 1285**
    **Orlando, Florida 32801**
    **(407) 246-8440**

    *Ms. Couch may have knowledge about Plaintiff's employment, Plaintiff's job duties, complaints made about Plaintiff, Plaintiff's termination, and Defendant's relevant employment practices.*

2.     Identify the name, address, telephone number and email address of any person, entity or internal department who provided information, consultation, or assistance with answering these Interrogatories. If applicable, please include an identified person's official position or relationship to Defendant.

**ANSWER:**

**Defendant objects to providing the names and addresses of those who may have provided information for these Interrogatories, as such information concerns communications between Defendant and its counsel, which is protected by the attorney-client privilege and work product doctrine.**

**The responses to these Interrogatories were compiled from various persons, sources, and documents, including employees of Defendant and its counsel, who have summarized and reduced the information to proper form for use in these Interrogatories. The individual providing verification does not represent that he or she has personal knowledge of all the facts stated herein, but that the process by which such facts were gathered and restated herein was satisfactory and complete, and the factual responses obtained herein accurately reflect the corporate knowledge of such facts on the date indicated by the executed verification page for these answers.**

**Subject to and without waiving these objections, the undersigned signatory verifies these Interrogatories on behalf of Defendant with the assistance of Defendant's counsel, Jackson Lewis P.C., 390 North Orange Avenue, Suite 1285, Orlando, FL 32801.**

3.     List all documents, with particularity, that you consulted, relied on, or have any relation to the substance of these interrogatories even if you did not consult with such documents to prepare these Interrogatories. Please state the title of each document, identify its signatories, including their titles, the date the document was prepared or signed, and the name of its present custodian and present location. Please include and list separately, any and all drafts of each document. Finally, if a document is stored electronically and/or in binary format, please state the location of the hard drive or other media where the information is stored.

**ANSWER:**

**Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case, as required by Federal Rule of Civil Procedure 26(b)(1). Specifically, this Request is overbroad, unduly burdensome, and seeks irrelevant information with respect to the language "consulted, relied on, or have any relation to the substance of these interrogatories." It is not feasible for Defendant to identify any possible document, much less identify every**

possible draft of each document, that has "any relation" to any Interrogatory or its answer.

**Subject to and without waiving these objections, please see the documents produced in response to Plaintiff's First Request for Production.**

4.    State every known instance Defendant BBA's agent(s) reprimanded, counseled, or otherwise disciplined Plaintiff, whether oral, written, or otherwise. Include the extent of the punishment for Plaintiff's alleged violation and describe the applicable internal policy. Additionally, please include the name of the individual who reprimanded Plaintiff on Defendant BBA's behalf.

**ANSWER:**

**Defendant objects to this Interrogatory to the extent that "reprimanded, counseled, or otherwise disciplined" is vague and overbroad. Plaintiff received constructive or corrective feedback or "counseling" on many occasions. If the term "counseling" is meant to include constructive feedback or critique of performance of work product, then the many individuals who supervised Plaintiff on various projects have likely all "counseled" Plaintiff on numerous occasions.**

**Subject to and without waiving these objections, regarding disciplinary action, in January 2022, Wayne Dunkelberger advised Plaintiff that her performance was unsatisfactory. He advised Plaintiff that despite his constructive feedback, her performance had failed to improve. Instead of placing her on a Performance Improvement Plan, which had already been prepared for Plaintiff by Lisa Couch in Human Resources, Mr. Dunkelberger advised Plaintiff that she would no longer perform work for the Design Operations team for which Plaintiff was hired due to her inadequate performance. Mr. Dunkelberger advised Plaintiff that she would assist other teams on other projects when they had need and desired her assistance.**

**In addition, Grayson Silver counseled Plaintiff she would not continue to work on his projects if she continued to artificially inflate her billable time, hide hours properly belonging to other projects on Mr. Silver's projects, and exhibit poor performance. Mr. Silver removed Plaintiff from at least three of his projects due to her poor performance and dishonesty.**

**In addition, Johnny Dagher counseled Plaintiff regarding her poor performance and removed Plaintiff from at least one project due to her poor performance.**

5.      For the last seven (7) years, state in detail any and all prior allegations made against Defendant BBA for discrimination, retaliation, or any unlawful employment practice under federal, state, or law or ordinance. Such complaints include those your employees/agents made, internally, formal, or otherwise, and those employment grievances filed against Defendant BBA with any governmental administrative agency, including, but not limited to the Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), or any other federal, state or local agency, concerning an employee's grievance with the Defendant BBA's policy. For each claim, list the following:

A.      the name, address and telephone number for the claimant and his/her attorney;

B.      the nature of the event;

C.      the names and address of all parties involved;

D.      the date and manner in which the event was resolved; and

E.      if any Court filings, the caption of the action with the name and address of the Court and the file/index number assigned to the action.

**ANSWER:**

**Pursuant to Plaintiff's agreement to limit the scope of this Interrogatory to the past five (5) years of prior allegations made against Defendant BBA for sex discrimination, pregnancy discrimination, FMLA retaliation, or FMLA interference, which named or involved Rob Ledford, Wayne Dunkelberger, Tim Baker, Jed Prest, Meghan Dietz, or Lisa Couch, Defendant withdraws its previous objection.**

**No such prior allegations or complaints exist.**

6.      Identify each and every person from whom you, or anyone acting in your behalf, has obtained any report, statement, recording, memorandum or testimony, whether signed or not, and whether prepared by someone other

than said person or not, concerning the facts of this lawsuit. Include in your answer the identity of the custodian of same.

**ANSWER:**

**Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case, as required by Federal Rule of Civil Procedure 26(b)(1). Specifically, this Interrogatory is overbroad to the extent that it seeks identification of "any report, statement, recording, memorandum or testimony, whether signed or not" with no temporal or factual limitation. In addition to the overbreadth of the Interrogatory, this Interrogatory is vague and ambiguous as it seeks this information "concerning the facts of this lawsuit" without indicating a date or parties involved in said "facts of this lawsuit" and without describing the "facts of this lawsuit" with reasonable particularity. The scope of discovery is determined by the claims and defenses at issue in the particular case. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997). "Although the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.'" *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).**

**To the extent this Interrogatory refers to any such materials collected by Defendant after Plaintiff's Charge of Discrimination or demand letter is privileged, or at the request of Defendant's attorneys, this information would be privileged and protected by work product privilege as the materials would have been prepared in anticipation of litigation.**

7.    List any and all written and/or recorded statements or reports of all witnesses or potential witnesses in this lawsuit in your possession, custody or control, excluding any privileged reports or statements between any party to this action and the party's attorneys.

**ANSWER:**

**Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case, as required by Federal Rule of Civil Procedure 26(b)(1). Specifically, this Interrogatory is overly broad, unduly burdensome, and seeks irrelevant information to the extent that it seeks identification of "any and all written and/or recorded statements or reports of all witnesses or potential witnesses**

in this lawsuit" without <u>any</u> temporal or factual limitations. The scope of discovery is determined by the claims and defenses at issue in the particular case. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997). "Although the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.'" *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

As phrased, this Interrogatory seeks every email, every note, every message, every work assignment, and any other document ever created by Plaintiff or any other individual listed in Defendant's Initial Disclosures, Defendant's Answers to Plaintiff's Interrogatories, or Plaintiff's Initial Disclosures at any point in time, regardless of the temporal or factual connection to Plaintiff's termination.

Subject to and without waiving these objections, Defendant directs Plaintiff to the documents produced in response to Plaintiff's First Request for Production.

8.    Identify all employees who were responsible for either preparing and/or administering Defendant BBA's personnel, employee(s) and human resources policies, trainings, and/or procedures during the Plaintiff's employment with Defendant, including but not limited to the employee(s) designated and responsible for receiving and investigating complaints of discrimination, harassment, and/or retaliation from employees.

**ANSWER:**

**Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case, as required by Federal Rule of Civil Procedure 26(b)(1). Specifically, this Interrogatory is overbroad, vague, and ambiguous to the extent that it seeks identification of individuals responsible for preparing or administering "Defendant BBA's personnel, employee(s) and human resources policies, trainings, and/or procedures" without describing "Defendant BBA's personnel, employee(s) and human resources policies, trainings, and/or procedures" with reasonable particularity. The scope of discovery is determined by the claims and defenses at issue in the particular case. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997). "Although the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.'" *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). As phrased, this Interrogatory seeks information**

regarding any training provided to any employee on any topic and any policy or procedure relating to any topic. As such, this Interrogatory is overly broad, vague, and unduly burdensome.

Defendant further objects to this Interrogatory on the grounds that it seeks information that is irrelevant and outside the scope of discovery to the extent that it seeks information regarding Defendant's investigation of complaints of discrimination, harassment, and/or retaliation. Plaintiff makes no allegation that Plaintiff ever made or tried to make a complaint of discrimination, harassment, and/or retaliation at any time during the course of her employment.

Subject to and without waiving its objections, Defendant states that Defendant's employees are required to read and verify that they have read and reviewed Defendant's Employee Handbook. Defendant further states that Human Resources provides Defendant's Employee Handbook to its employees and provides additional training pertaining to Defendant's Employee Handbook upon request. Employees who wish to make a complaint regarding discrimination, harassment, and/or retaliation shall make such complaint to Human Resources.

9.    Describe any employment benefits Plaintiff received during her employment with Defendant, including but not limited to, Plaintiff's salary, in addition to health insurance benefits, sick leave benefits, or any other benefits Plaintiff was entitled to or eligible to receive as an employee of Defendant.

ANSWER:

Defendant directs Plaintiff to Plaintiff's Compensation Statements which will be made available for inspection or produced in response to Plaintiff's First Request for Production.

10.    Please describe the condition of Plaintiff's work area upon her return from maternity leave on or around April 3, 2023, including any remedial efforts taken by Defendant to remedy the issue and the name, title, and gender of the employee(s) responsible for the remedial efforts.

ANSWER:

Defendant's employees work in pods or in some other form of open desking. Plaintiff worked in a pod. Each pod is a rectangular space,

typically seating four employees and located along an interior wall. Pods are directly adjacent to one another, sharing partitions between pods. Each pod contains desking which wraps continuously around the pod except for the entrance to the pod. Typically, there are four employees seated in each pod, with one employee in each corner of the pod. There are built-in file cabinets underneath the desking in between the corner desks.

Defendant hired a company to remove two desking sections containing file cabinets in Plaintiff's pod. The portions to be removed were on the longer sides of the rectangular pod to replace the file cabinets with usable desking in which employees could be seated. This light construction was scheduled to be completed prior to Plaintiff's return to work, but, due to circumstances outside of Defendant's control, the construction was delayed and was still underway when Plaintiff returned to work on April 3, 2023.

The light construction was fairly minimal, but because it was not fully completed upon Plaintiff's return, Jed Prest (Orlando Managing Partner, male), advised Plaintiff that she could work in one of the enclosed lounges until the construction was complete.

11.   Please describe Plaintiff's assigned workload as a Senior Interior Designer, including the methodology for assigning work to Plaintiff, the individual responsible for assigning work to Plaintiff, the manner in which work assignments are tracked (e.g., using a software application or website, etc.), and identify any changes that were made to Plaintiff's workload from December 1, 2022, to April 17, 2023.

**ANSWER:**

Prior to January 2022, Wayne Dunkelberger typically assigned projects and work to Plaintiff because he hired her and supervised her on the Design Operations team. When work was slow, Mr. Dunkelberger would lend Plaintiff's assistance to other teams in need. However, in January 2022, Mr. Dunkelberger advised Plaintiff that she would no longer perform work on Design Operations projects due to her continued performance problems.

Each Wednesday, Tim Baker, Rob Ledford, Wayne Dunkelberger, Tyler Kirby, John Slavens, Michael Frohnappel, Jed Prest, Grayson Silver, Brad Lutz, and Chad Byers typically had a meeting. At the meetings, whoever was in attendance would discuss their team's workloads and staffing needs. After January 2022, Plaintiff's work assignments were typically decided in these meetings. Work would be assigned to Plaintiff by any person in this

meeting who would allow her to perform work for their team and whose team had available work which she was qualified to perform.

Plaintiff took paid time off work beginning in December 2022 through January 4, 2023. From January 4, 2023 through April 3, 2023, Plaintiff was on maternity leave. While Plaintiff was on leave, she was not performing any work and thus was not assigned work. When Plaintiff returned from leave, there was little or no work to assign to her due to a declining demand for Defendant's interior designers.

Plaintiff tracked the time she spent working on various assignments in a software program called Ajera.

12.    Describe in detail any alleged deficiencies or issues that Defendant BBA had with Plaintiff's work performance or attendance during Plaintiff's employment with Defendant, if any. In doing so, identify any and all documents that reflect said deficiencies or issues.

**ANSWER:**

As a senior interior designer, Plaintiff was expected to independently create designs with very little, if any, internal feedback, to present her design to the client and receive feedback, to implement the client's feedback, and to present the final design to the client. The ability to work independently and present effectively were crucial to her position.

Numerous individuals who supervised and worked with Plaintiff noticed her frequent inability to work independently. Her work product often required significant feedback, markups, and numerous rounds of comments before her product would be ready to send to the client. Her work product often failed to meet Defendant's expectations that Plaintiff work independently and that her work product would be client-ready with little to no feedback. Beyond the mere fact that her work product typically was not client-ready, the feedback on her work was often to correct basic errors that an interior designer at her level should not have made. For example, on several occasions, her supervisors had to re-draw her work due to its poor quality.

Additionally, Plaintiff struggled to use Revit, the building information modeling software program which Defendant used. Using Revit effectively was critical to Plaintiff's position, and she did not meet expectations.

Plaintiff had difficulties with time management and meeting deadlines. Due to her failure to complete her assignments in a timely manner, it was necessary on several occasions for Defendant to bring in other interior designers, project managers, or supervisors to finish Plaintiff's project so Defendant could meet the client's deadline.

On multiple occasions, Plaintiff was unable to attain client satisfaction with her designs, her communication, or her presentation. There were times that clients were so dissatisfied with Plaintiff's performance that they fired Defendant from the project or demanded that Defendant remove Plaintiff from the project – or the client would fire Defendant. The reasons for clients' dissatisfaction with Plaintiff varied, but it often stemmed from Plaintiff's conflict with clients. Plaintiff could be obstinate and resistant to clients' wishes. At times, clients would express their vision to Plaintiff, and instead of executing their vision, she would resist their vision and do what she thought was best. This resulted in frustrated clients. She would present her design to the client, the client would tell her they were dissatisfied and wanted it changed, she would re-design and re-present her design, and the client still did not like it because it did not implement the feedback the client had provided. This happened several times and resulted in clients being angry with Plaintiff and with Defendant because of Plaintiff's performance.

13.    Please state the date(s) on which Defendant made the decision to eliminate positions as part of Defendant's reorganization conducted in or around April of 2023, and please include the name, gender, title, and supervisor of any employee(s) involved, whether in whole or in part, in the decision to eliminate positions as part of Defendant's restructuring conducted in or around April 2023.

ANSWER:

When Plaintiff was employed by Defendant, interior designers were located within architectural silos. However, many interior designers were unhappy and unprofitable in this structure. On January 5, 2023, Tim Baker (Chief Executive Officer, male) decided that significant restructuring of the interior designers was necessary. Defendant decided to restructure its organization with regard to interior designers by removing interior designers from architectural silos and creating a silo solely for interior designers. Defendant determined that due to this upcoming restructuring of its Interior Design Department, some interior designer positions would become unnecessary and duplicative.

In November 2022, Defendant became concerned about billing actualizations falling short of billing projections and began contemplating how to restore Defendant's financial health. In early 2023, after several months of billing projections which did not come to fruition, it became clear to Defendant that a substantial number of layoffs were going to be inevitable throughout the course of the year. In that same timeframe, as Defendant considered the best manner in which to restructure the interior designers, Defendant realized that its need for interior designers was declining due to a lack of design projects in the pipeline. On March 9, 2023, Tim Baker (Chief Executive Officer, male) advised his executive team that Defendant was employing too many individuals for Defendant's projected revenue. As such, Defendant determined that its April 2023 reduction in force would consist of interior designers due to revenue issues, the restructuring, and declining demand for interior designers. This decision was made by Rob Ledford (Chief Operating Officer, male), Wayne Dunkelberger (Chief Design Officer, male), and Tim Baker (Chief Executive Officer, male). These individuals solicited feedback from other partners and from individuals who supervised Plaintiff and the other senior interior designers.

Defendant initially assessed its entire workforce as it evaluated where to make personnel reductions for its April 17, 2023 reduction in force, and Defendant decided that reductions to the interior design department would be efficient due to its upcoming restructuring. When Defendant evaluated the interior design department with reductions in mind, Defendant quickly identified problems regarding senior interior designers' performance and profitability compared to their salaries.

Plaintiff's employment was terminated on April 17, 2023 as a result of revenue loss, the restructuring, declining demand for interior designers, and Plaintiff's poor work performance. In considering Plaintiff's poor work performance, Defendant considered the deficiencies identified in answer to Interrogatory 12. The decision to terminate Plaintiff was made by Rob Ledford, Wayne Dunkelberger, and Tim Baker.

14.    Describe in detail the criteria and methodology used in selecting employee(s) to be terminated and/or have their positions eliminated as part of Defendant's restructuring conducted in or around April 2023 including the name, gender, title, and supervisor of the employee(s) responsible for choosing the criteria and methodology.

**ANSWER:**

**In answer to this Interrogatory, Defendant incorporates by reference as if set forth fully herein its Answer to Interrogatory 13.**

15.   Describe in detail the reason for the Plaintiff's termination and/or position elimination, including the date of termination/position elimination, and the name, gender, title, and supervisor, of any employee(s) involved, whether in whole or in part, in the decision to terminate Plaintiff and/or eliminate Plaintiff's position.

**ANSWER:**

**In answer to this Interrogatory, Defendant incorporates by reference as if set forth fully herein its Answer to Interrogatory 13.**

16.   Identify all employee(s) who Defendant BBA selected for termination and/or to have their positions eliminated as part of Defendant's restructuring conducted in or around April of 2023. For each employee identified, please state their name, gender, title, supervisor, and the reason for their termination and/or position elimination.

**ANSWER:**

1. **Plaintiff**
   **Female**
   **Senior Interior Designer, Interior Design 3 Salary Band**
   **Wayne Dunkelberger**
   **Terminated because of Defendant's revenue situation, because her position became unnecessary due to the restructuring impacting interior designers, and because of her poor performance.**

2. **Russchelle Fox**
   **Female**
   **Senior Interior Designer, Interior Design 3 Salary Band**
   **Michael Frohnappel**
   **Terminated because of Defendant's revenue situation, because her position became unnecessary due to the restructuring impacting interior designers, and because of her poor performance.**

3. **Alexandra Taylor**
   **Female**
   **Senior Interior Designer, Interior Design 3 Salary Band**
   **Johnny Dagher**
   **Terminated because of Defendant's revenue situation, because her position became unnecessary due to the restructuring impacting interior designers, and because of her poor performance.**

17.    Identify all employee(s) who Defendant BBA considered to be selected for termination and/or to have their positions eliminated as part of Defendant's restructuring conducted in or around April of 2023, but were not ultimately selected. For each employee identified, please state their name, gender, title, supervisor, and the reason why they were not ultimately selected for termination and/or position elimination by Defendant BBA.

**ANSWER:**

**Defendant objects to this Interrogatory to the extent that "considered to be selected" is vague and overbroad. On August 8, 2024, Defendant answered this Interrogatory "separately and fully in writing and under oath," without asserting an objection and according to Defendant's reasonable interpretation, in good faith, "according to the meaning the plain language of the interrogatory would naturally import," as required by Federal Rule of Civil Procedure 33(b) and as clarified by the Middle District of Florida's Civil Discovery Handbook Section IV(A)(3). At the time Defendant answered this Interrogatory, the meaning of the Interrogatory appeared to be clear pursuant to Defendant's reasonable interpretation, and Defendant "offer[ed] an answer designed to provide, rather than deny, information."** *Id.*

**Defendant has since learned that there is misunderstanding regarding the term "considered to be selected." To the extent the term "considered to be selected" is intended to encompass _categories_ of employees rather than _individual_ employees, Defendant objects for the reasons described herein. If the term "considered to be selected" is intended to include Defendant's entire workforce because, at some point, Defendant would have "considered" its entire workforce to assess where to focus its April 17, 2023 staffing reductions, then such a request would seek the "name, gender, title, [and] supervisor" of each and every one of Defendant's more than one hundred employees – information that would clearly be irrelevant, grossly overly broad, and outside the scope of discovery.** *Chudasama v. Mazda Motor Corp.,* **123 F.3d 1353, 1368 n.37 (11th Cir. 1997). Moreover, it would not even be possible**

for Defendant to provide "the reason why they were not ultimately selected for termination and/or position elimination" for every employee because Defendant did not _actually consider_ every employee for termination or position elimination with regard to the April 17, 2023 reduction in force. Similarly, if the term "considered to be selected" was intended to include each and every interior designer employed by Defendant because, at some point, Defendant would have "considered" the interior design _department as a whole_ to assess where to focus its April 17, 2023 staffing reductions – such a request would seek information that is clearly irrelevant, grossly overly broad, and outside the scope of discovery for the same reasons articulated above. Further, Defendant would not be able to provide "the reason why they were not ultimately selected for termination and/or position elimination" for every interior designer because Defendant did not _actually consider_ every interior designer for termination or position elimination with regard to the April 17, 2023 reduction in force. In sum, there are substantial and significant differences between 1) comparing categories of employees to narrow the scope of a staffing reduction and 2) comparing individual employees to determine which employees to retain or terminate. The reasonable, good faith interpretation of the term "considered to be selected" according to the plain language of the Interrogatory is the comparison of individual employees. To the extent this Interrogatory seeks information for _categories_ of employees, Defendant objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case, as required by Federal Rule of Civil Procedure 26(b)(1). "Although the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.'" _Porter v. Ray_, 461 F.3d 1315, 1324 (11th Cir. 2006).

Subject to and without waiving these objections, Defendant initially assessed its entire workforce as it evaluated where to make personnel reductions for its April 17, 2023 reduction in force, and Defendant decided that reductions to the interior design department would be efficient due to its upcoming restructuring. When Defendant evaluated the interior design department with reductions in mind, Defendant quickly identified problems regarding senior interior designers' performance and profitability compared to their salaries.

As such, the four senior interior designers in the Interior Design 3 salary band were considered for the April 17, 2023 reduction in force. The only senior interior designer in the Interior Design 3 salary band who was not ultimately selected for termination was Angela Reed, female, Senior Interior Designer whose supervisor is Wayne Dunkelberger. She was not

**selected for termination due to her superior client satisfaction, ability to move projects forward without assistance, higher design skills, and greater creativity.**

18.    Identify the employee(s) responsible for designating and/or approving Plaintiff's leave requests, including but not limited to, maternity leave requests, paid leave requests, sick leave requests, and/or FMLA leave requests, during Plaintiff's employment with Defendant. For each employee identified, please state their name, gender, title, and supervisor.

**ANSWER:**

**Lisa Couch (female, Human Resources) approved Plaintiff's maternity leave and FMLA leave requests.**

19.    Please state all leave requests made by the Plaintiff during her employment, including but not limited to, maternity leave requests, paid leave requests, sick leave requests, and/or FMLA leave requests, and please state: (1) the date of the request, (2) the type of leave requested, (3) the employee re-sponsible for evaluating and/or approving the request, and (4) whether the re-quest was approved or denied, and (5) the dates of the leave requested.

**ANSWER:**

**The only leave request made by Plaintiff was on November 21, 2022 when she requested maternity and FMLA leave. Plaintiff requested to take this leave from December 30, 2022 through April 1, 2022. Lisa Couch approved Plaintiff's request.**

20.    Identify all employees of Defendant BBA whom you contend had supervisory authority over Plaintiff during the course of Plaintiff's employment with Defendant, and provide the name, title, supervisor, and gender, and indicate whether they are still employed with Defendant.

**ANSWER:**

**Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this action nor proportional to the needs of the case, as required by Federal Rule of Civil Procedure 26(b)(1). Specifically, this Interrogatory is overbroad, vague, and ambiguous to the extent that it seeks**

identification of individuals responsible for preparing or administering "supervisory authority" with reasonable particularity. The scope of discovery is determined by the claims and defenses at issue in the particular case. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997). "Although the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.'" *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). As phrased, it is unascertainable what information this Interrogatory seeks. "Supervisory authority" could refer to individuals who managed Plaintiff on a task, on one project, on multiple projects, through a course of time, could refer to individuals with the ability to alter the terms or conditions of Plaintiff's employment, could be limited to individuals with the power to hire and fire other individuals, and is vague and overbroad as written.

Subject to and without waiving the foregoing objection, Defendant identifies the following individuals to whom Plaintiff reported on one or more projects during her employment with Defendant:

1. **Wayne Dunkelberger**
   **Chief Creative Officer, Baker Barrios Architects, Inc.**
   **Male**
   **Tim Baker**

2. **Johnny Dagher**
   **Director Senior Living, Baker Barrios Architects, Inc.**
   **Male**
   **Tim Baker, Rob Ledford, Wayne Dunkelberger**

3. **Meghan Dietz**
   **Design Operations Director, Baker Barrios Architects, Inc.**
   **Female**
   **Wayne Dunkelberger**

4. **Cory Heck**
   **Design Director, Baker Barrios Architects, Inc.**
   **Male**
   **Wayne Dunkelberger**

5. **Grayson Silver**
   **Director Vertical Mixed-Use + Director Student Housing, Tampa**
   **Managing Partner, Baker Barrios Architects, Inc.**
   **Male**
   **Tim Baker, Rob Ledford, Wayne Dunkelberger**

6. **Jed Prest**
   **Director Commercial Mixed-Use + Director K-12 Education, Orlando**
   **Managing Partner, Baker Barrios Architects, Inc.**
   **Male**
   **Tim Baker, Rob Ledford, Wayne Dunkelberger**

7. **Chad Byerly**
   **Retired**
   **Male**
   **Tim Baker, Rob Ledford, Wayne Dunkelberger**

8. **Michael Lynch**
   **Project Manager, Baker Barrios Architects, Inc.**
   **Male**
   **Grayson Silver**

9. **Brad Lutz**
   **Practice Leader Multifamily, Managing Principal Chicago, Baker**
   **Barrios Architects, Inc.**
   **Male**
   **Tim Baker, Rob Ledford, Wayne Dunkelberger**

10. **Annette Rivera**
    **Director Commercial Mixed-Use Projects, Baker Barrios Architects,**
    **Inc.**
    **Female**
    **Rob Ledford**

11. **David Del Tosto**
    **Architect, Alfonso Architects, Inc.**
    **Male**
    **Rob Ledford**

12. **Peter Vidal**
    **Project Manager, Baker Barrios Architects, Inc.**
    **Male**
    **Jed Prest**

21.     Please identify and describe in detail any insurance agreements under which any person or entity engaged in the insurance business may be liable to satisfy part or all of any judgment that may be entered against Defendant BBA in this action or to indemnify or reimburse for payments made to satisfy the judgment. For each such insurance agreement, please provide the following information:

A.     the name, address, and telephone number of the insurance company or other insurer,

B.     policy number(s) and effective dates of each policy,

C.     limits of liability coverage for each policy,

D.     the nature and extent of coverage provided by each policy, including any excess or umbrella policies, and

E.     the name, address, and telephone number of the claims adjuster or other representative responsible for handling claims under each policy.

**ANSWER:**

**Defendant directs Plaintiff to Defendant's Insurance Policy Declaration Page which will be made available for inspection or produced in response to Plaintiff's First Request for Production.**

## **VERIFICATION**

I, <u>Rob Ledford</u>, hereby state as follows:

1.     I am the <u>Chief Operating Officer</u> for BAKER BARRIOS ARCHITECTS, INC.

2.     I have reviewed the foregoing Amended Answers and Objections to Plaintiff's First Set of Interrogatories to Defendant. The information provided therein was obtained from current and former employees of BAKER BARRIOS ARCHITECTS, INC. and/or from Company records. BAKER BARRIOS ARCHITECTS, INC. reserves the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein, or that more accurate information is available.

3.     Subject to limitations set forth herein, I verify under penalty of perjury that the foregoing Answers and Objections to Plaintiff's First Set of Interrogatories are true and correct to the best of my knowledge, information and belief.

BAKER BARRIOS ARCHITECTS, INC.

By:

STATE OF FLORIDA       )
                                        ) SS.
COUNTY OF _____   )

SWORN TO AND SUBSCRIBED BEFORE ME, this ___ day of <u>August</u>, 2024, by _____ as _____ of    BAKER     BARRIOS ARCHITECTS, INC., **by means of ☐ physical presence or ☐ online notarization, and** ☐ who is personally known to me or ☐ produced _____ as identification.

_____
Notary Public

My Commission Expires:

DATED this 20th day of September, 2024.

Respectfully submitted,

JACKSON LEWIS P.C.
390 North Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone:   (407) 246-8440
Facsimile:    (407) 246-8441

By:    /s/ Justin W. McConnell
       Justin W. McConnell
       Florida Bar No. 112631
       justin.mcconnell@jacksonlewis.com

       Mackenzie N. Allan
       Florida Bar No. 1031199
       mackenzie.allan@jacksonlewis.com

       Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of September, 2024, the foregoing was furnished by email to: Kyle T. MacDonald, Esq., Derek Smith Law Group, PLLC, 520 Brickell Key Drive, Suite O-301, Miami, FL 33131.

/s/ Justin W. McConnell
       Justin W. McConnell

4889-3844-2983, v. 1